## Case No. 16,656.

### UNITED STATES v. WEBBER.

#### [1 Gall. 392.] [1]

Circuit Court, D. Massachusetts. May Term, 1813.

COLLECTION LAWS — REPORTING ARRIVAL OF VESSEL—PORTS OF REFUGE.

The provisions of the 30th section of the act of March 2, 1799, c. 128 [1 Story's Laws, 598; 1 Stat. 649, c. 22], apply to all vessels arriving at a port, whether the arrival be voluntary or by stress of weather, or the port be the intended port of discharge or not.

[Cited in Walsh v. U. S., Case No. 17,116.]

[Error to the district court of the United States for the district of Massachusetts.]

The original action [against Ignatius Webber, Jr.] was debt for $1,000, the penalty provided by the 30th section of the collection law [of March 2, 1799 (1 Story's Laws, 598; 1 Stat. 649)], for not making the report required thereby within twenty-four hours after arrival of any vessel from a foreign port.

G. Blake, for the United States.
William Prescott, for defendant.

---

[1] [Reported by John Gallison, Esq.]

STORY, Circuit Justice. The single question arising out of the bill of exceptions in this case depends upon the true construction of the 30th section of the act of March 2, 1799, c. 128 [1 Story's Laws, 598; 1 Stat. 649, c. 22]. The district judge, in effect, held that the provisions of this section did not apply to any vessel arriving from a foreign port at a port of the United States, where the arrival was from necessity, and not of choice; and there was no intention to make such port a port of delivery of any part of the cargo. [Case unreported.] The attorney for the United States contends, that this opinion is erroneous. It is admitted, that the language of the section is sufficiently comprehensive to embrace cases of involuntary, as well as of voluntary arrival. And, unless a more limited construction arise from the context and purview of the act, it is the duty of the court to give full effect to the language. Whatever may be the hardship or inconvenience of the decision, it cannot authorize the court to interpose limitations, where the legislature have shown no such intention; and it will be for the wisdom of the legislature to relax the rigors of the law, if public or private mischief grow out of its extensive applicability.

I have examined with care and deliberation all the sections of the act, which have been cited in the argument to illustrate the section under consideration; and the result of my judgment is, that there is nothing to extract the present case from its operation. I have no doubt that the section was designed to apply to every case of the arrival of a vessel from a foreign port at any port of the United States, where the original destination was to the United States. By recurring to the preceding sections, particularly the 25th and 26th sections, it will be found, that when the legislature designed to apply any provision to cases only, where the arrival should be at the port of destination and discharge, the language expressly so limits it. Thus, the second manifest, to be produced to the officers of the customs, is limited to the vessel's "arrival within the limits of any district of the United States, in which the cargo, or any part thereof, is intended to be discharged or landed." The 27th section prohibits the voluntary unlading of any goods, unless duly authorized by the proper officer of the customs, after the arrival of any vessel within a district of the United States. The 29th section prohibits the departure of any vessel after her arrival within a district of the United States, unless to proceed on her way to some more interior district, before report and entry shall be made to the collector of some district of the United States. There can be no doubt, that these sections are applicable to all arrivals, be they from choice or from necessity. Then comes the 30th section, in no part of which can I discern an intention to except the case of an arrival at a port, which is not the port of destination or delivery, or which is sought from necessity and not

from choice. The objection seems to be, to limit the times, within which the reports shall be made to the officers of the customs, in order to ensure the security and execution of the revenue system. If the vessel remain twenty-four hours, the first report is to be made; and if she remain forty-eight hours, the second report is to be made, in the manner prescribed by the act.

If the construction contended for by the defendant's counsel be adopted, it will follow, that the 30th section can never apply to any arrival, except of a vessel destined for the particular port. at which she arrives. It cannot apply to any vessel having an ulterior destination of her whole cargo, however long she may remain in another port. How can we reconcile this construction with the provisions of the 32d, 33d, and 34th sections? These sections are equally as applicable to cases, where the whole cargo is to be exported to another port, whether foreign or domestic, as to cases of a partial exportation. The language of the 34th section is exceedingly strong. It provides, that before any ship or vessel shall depart from the district, in which she shall first arrive, for another district, provided such departure be not within forty-eight hours after her arrival within such district, with goods, wares and merchandize brought in such ship or vessel from a foreign port or place. the duties whereof shall not have been paid or secured, the master, &c. shall obtain from the collector of the district a copy of the report and manifest made by such master, &c. certified by the collector. What report and manifest are here referred to? Plainly the report and manifest required to be made within forty-eight hours by the 30th section. And the form of the certificate, addressing itself to the case of an ulterior destination of the whole cargo, states, "that no part of the said cargo, as expressed in such manifest, hath been unladen or landed at this port."

It is argued, that the 30th section does not apply to cases of necessity, because there is another section (the 60th section), which provides for such cases. But I am well satisfied, that the 30th section applies only to vessels originally bound to the United States, and that the 60th section applies only to vessels originally bound to foreign countries. This construction, if it requires support, is demonstrated by the 32d section and particularly by the proviso of that section. And so far from forming an exception to the provisions of the 30th section the 60th section evidently requires the same report to the collector within forty-eight hours, in cases of arrival from necessity or from stress of weather, as is required by the act in other cases.

It is further argued, that this construction of the 30th section is unreasonable, because it will prevent vessels in many cases from sailing with the first favorable wind, when the collectors reside at a distance from the port, at which the vessels arrive. Admitting the hardship to exist, it certainly forms no solid objection to the construction of the act, however proper it might be, if addressed to the discretion of the legislature.

It has been urged with quite as much force, that the construction of the defendant's counsel would open a door to the grossest frauds upon the United States. Vessels might come into a port under the cover of necessity, and remain there as long as they pleased, without any adequate means of detecting illegal traffic, or ensuring a faithful payment of duties.

On the whole, as I cannot perceive any sufficient ground, or which to rest an exception, in the face of the positive language of the act, I am of opinion that the section equally applies. whether the arrival be from necessity or from choice, and whether the port be or be not the port of destination or delivery of the whole or any part of the cargo. The consequence is, that the judgment of the district court must be reversed; and conformably to our opinion in the case of U. S. v. Sawyer [Case No. 16,227], a new trial must be had at the bar of this court.

I confess that I have come to this conclusion with some reluctance, from the great respect, which I entertain for the learned judge, who presides in the district court, and also from having been of counsel against the United States in several causes of a similar nature, where I felt the full force of the embarrassments, to which this rigorous construction will in some instances unavoidably lead. Judgment reversed.